**The PEOPLE of the State of Colorado, Complainant,**

v.

**George Case PRICE, Attorney–Respondent.**

**No. 96SA423.**

Supreme Court of Colorado, En Banc.

Dec. 16, 1996.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Jeffrey A. Chase, Denver, for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline case entered into a stipulation, agreement and conditional admission of misconduct with the assistant disciplinary counsel. C.R.C.P. 241.18. The conditional admission recommended that the respondent be suspended from the practice of law for one year and one day in conjunction with certain conditions. An inquiry panel of the supreme court grievance committee approved the conditional admission, including the recommended conditions. We accept the conditional admission and the inquiry panel's recommendation.

### I.

The respondent was admitted to practice law in Colorado in 1980. The conditional admission combines the charges contained in three formal complaints, and provides as follows:

### A.

Beginning in April 1991, the respondent represented Sue Z. Leggett in her dispute

with the Strasburg School District. Leggett had been terminated, and the school board decided not to reinstate her. The respondent then agreed to represent her on a contingent fee basis to fight the school board's action. The respondent now admits that he did not have a written fee agreement with his client, in violation of Chapter 23.3 of the Colorado Rules of Civil Procedure, "Rules Governing Contingent Fees," Rule 4 of which requires that a contingent fee agreement be in writing and that the lawyer explain other types of fee arrangements.

The respondent filed a C.R.C.P. 106 proceeding in the district court, which ruled against Leggett, and the respondent filed an appeal in the court of appeals in October 1993. The school district agreed in March 1994 to settle the matter for a lump sum of $15,000. The school board gave the respondent a check for $15,000, and the respondent had his client endorse the check before depositing it into his trust account.

According to the respondent, Leggett was entitled to two-thirds of the settlement proceeds, after deducting the costs and filing fees incurred in the action. Leggett's share amounted to about $7,856. The respondent attempted to send Leggett her share in May 1994, but, for unknown reasons, she did not receive the check.

On July 5, 1994, Leggett wrote to the respondent, with a copy to the grievance committee, indicating that she had not received any of her settlement proceeds from the respondent. The respondent purchased a cashier's check in the amount of $8,013 on July 12, and delivered it to Leggett. The additional $157 was intended to compensate her for the delay.

A review of the respondent's trust account reveals that after the respondent deposited the $15,000 from the Leggett settlement into the account, the account dropped below the amount owed to his client. By May 31, 1994,

the trust account had a balance of $36.15. The respondent represents that there were two reasons for this. First, either his bank or he made a mistake in transferring funds from his trust account to his business account. Second, the respondent suffered from acute depression during 1994. According to a psychiatrist that evaluated the respondent at his request, this caused him to be inattentive to financial matters during the relevant time periods. Therefore, the respondent's misappropriation of client funds was due to inattention and neglect rather than to a knowing conversion.

On July 7, 1994, the date that Leggett sent the letter to the respondent stating that she had not received any of her settlement proceeds, the balance in the respondent's trust account was $268.61. The respondent deposited $10,000 into the trust account on July 11, part of which was used to purchase the cashier's check he delivered to Leggett. The $10,000 was borrowed from a friend.[1]

The respondent has admitted that the above conduct violated R.P.C. 1.15(a) (a lawyer shall hold property of clients or third persons separate from the lawyer's own property); R.P.C. 1.15(b) (a lawyer shall promptly deliver to a client or third person any funds or other property that the client or third person is entitled to receive); and C.R.C.P. 241.6(2) (an act or omission which violates rules or standards of legal ethics shall constitute grounds for discipline).

## B.

The respondent represented Erwin Witzel in June 1994 in an action filed by the Colorado Student Loan Program against Witzel. A settlement agreement was entered into between the respondent and the lawyers for the loan program whereby the respondent's client was to pay $11,000 to the lawyers on behalf of the loan program.

Witzel wired $12,000 from Phoenix, Arizona to the respondent's trust account on

1. The respondent was immediately suspended from the practice of law on January 12, 1995, because of the allegations in the Leggett matter. Following an evidentiary hearing, and the rec-

ommendation of the hearing officer, the court vacated the respondent's immediate suspension on February 7, 1995, pending final disposition.

June 9, 1994. The respondent wrote a check for $11,000 the same day to the order of the lawyers for the loan program. When the check was presented for payment on June 15, however, it was returned due to insufficient funds in the respondent's trust account to pay it in full. The respondent did not maintain all of Witzel's funds in the trust account to pay the check he had written to the other lawyers, because of the accounting error mentioned in section I(A) above.

The respondent wrote a $6,000 check to the loan program's lawyers on July 1, 1994, in partial payment of the $11,000 that should have been delivered to them in June. He paid the remaining $5,000 in September 1994. The respondent never informed Witzel of the use he had made of the funds, nor did he advise Witzel that the $11,000 settlement was not paid in full until September.

The respondent stipulated that the foregoing conduct violated R.P.C. 1.4(a) (failure to communicate adequately with a client), R.P.C. 1.15 (failure to hold property of a client or third person separate from the lawyer's own property and to promptly deliver to the client or third person any funds that the client or third person is entitled to receive), and C.R.C.P. 241.6(4) (an act or omission constituting gross negligence).

### C.

Beginning in January 1994 and continuing through August 1994, the respondent wrote about thirty checks on his business account that were returned for insufficient funds, and about twenty-five checks that were paid by the bank even though there were not enough funds in the account to cover them. During the same time period, nine checks written on his trust account were returned for insufficient funds. The respondent's conduct violated R.P.C. 8.4(h) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law), and C.R.C.P. 241.6(4) (committing an act or omission constituting gross negligence).

### D.

A high school teacher hired the respondent in October 1993 to represent him in an employment dispute with the Denver Public Schools. The teacher had been charged with inappropriate conduct with a student. The respondent negotiated an agreement in May 1994 concerning the teacher's teaching certificate with an assistant attorney general representing the state department of education. About June 10, 1994, the teacher signed a settlement agreement with the department of education. The respondent and his client believed that the six-month suspension provided by the agreement would begin to run on the date the client signed the agreement.

The respondent's client contacted him in December 1994 about getting his teaching certificate back. The assistant attorney general told the respondent that the department of education did not consider the agreement to have become effective until October, 1995. The respondent and the assistant attorney general had several discussions about the matter. However, as noted above the respondent was immediately suspended from the practice of law on January 12, 1995.

On January 23, the respondent met with his client and assisted him in drafting a letter to the Commissioner of Education concerning the effective date of the settlement agreement. Shortly thereafter, the respondent discussed the issues raised in the letter with the assistant attorney general. On January 27, 1995, the respondent faxed a copy of the letter to the assistant attorney general with a note asking him to telephone the respondent about the letter.

The respondent's suspension was vacated on February 7, 1995. Although the respondent indicates that he was not trying to advocate a legal position for the teacher but was attempting to conclude the matter, he has admitted that his conduct did constitute the practice of law after he had been suspended, contrary to R.P.C. 5.5(a) (a lawyer shall not practice law in a jurisdiction in violation of the regulations of the legal profession), and C.R.C.P. 241.6(6) (an act or omission which violates the rules regarding lawyer discipline and disability or which violates an order of discipline or disability shall constitute grounds for discipline).

### E.

When the teacher signed the settlement agreement on June 10, 1994, the respondent did not immediately deliver the papers to the assistant attorney general. Throughout August, the assistant attorney general attempted to contact the respondent so that he could present the agreement at the next school board meeting in September 1994. The respondent never returned the state's attorney's calls or delivered the signed agreement. The assistant attorney general ultimately had to pick up the agreement at the respondent's office so that he could submit it at the October board meeting. On December 20, 1994, the assistant attorney general wrote to the respondent and explained that the settlement agreement was signed by the department of education on October 7, 1994, and that the respondent's client's teaching certificate would not be reinstated until April 7, 1995, six months thereafter. The respondent has stipulated that the foregoing conduct violated R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to that lawyer).

### F.

In February 1995, John E. Greene contacted the respondent regarding a dispute with the state board for community colleges. Greene had been laid off from a teaching position several years earlier and he contended that the state board had breached its obligation to keep him apprised of future openings following his layoff.

The respondent sent a letter to the state board for community colleges on February 20, 1995, offering to settle the Greene matter for $275,000. The state board made no offer to settle, and the respondent's offer expired by its own terms in the beginning of March 1995. The respondent advised Greene to file a lawsuit. Greene paid the respondent a $250 fee to be used for costs incurred in the action and the respondent agreed to file a complaint against the state board for community colleges for a contingent fee of one-third of the amount recovered.

Between March and October 1995, Greene tried to reach the respondent to confirm that the action had been filed. He had no success. Only after Greene filed the request for investigation in this matter with the Office of Disciplinary Counsel did the respondent give him a draft copy of a complaint to be filed in district court. Although his client approved the complaint in early November, the respondent did not file it until November 29, 1995.

The respondent's conduct in the Greene matter violated R.P.C. 1.3 (neglect of a legal matter), and R.P.C. 1.4(a) (failure to communicate adequately with a client).

### G.

On March 10, 1994, Patricia Raven filed a complaint on her own behalf in federal district court against her former employer under Title VII of the Civil Rights Act of 1964. Raven alleged discrimination in employment because of her race. A short time later, she retained the respondent to represent her on a contingent fee basis, and he entered his appearance in May 1994.

On August 26, 1994, the defendant sent Raven and the respondent its first set of interrogatories, requests for admission, and requests for production of documents. Approximately one week before the responses were due, Raven provided the respondent with written answers to the discovery requests. However, the respondent never submitted responses to the discovery requests. Based primarily on Raven's failure to respond to the discovery requests, and her failure to deny that she had not been subjected to any adverse employment decisions as a result of her race, the defendant employer moved for summary judgment. The respondent did not submit a response to the motion or advise his client that such a motion had been filed. On December 28, 1994, the federal district judge granted the defendant's motion for summary judgment.

On January 9, 1995, the respondent filed a motion for extension of time until January 18 to file a motion for reconsideration of the

summary judgment order. He filed a second motion for extension of time on January 18. Because the respondent had been immediately suspended from the practice of law on January 12, the district judge denied the motion for extension of time without prejudice. The summary judgment order became final and Raven lost her claim.

As he has admitted, the foregoing conduct violated R.P.C. 1.3 (neglect of a legal matter), R.P.C. 8.4(d) (engaging in conduct that is prejudicial to the administration of justice), R.P.C. 8.4(h) (conduct adversely reflecting on fitness to practice law), and C.R.C.P. 241.6(4) (committing an act or omission constituting gross negligence).

## II.

The inquiry panel approved the conditional admission including the recommendation that the respondent be suspended for one year and one day and that he submit to certain monitoring conditions following reinstatement. According to the assistant disciplinary counsel, the predominant disciplinary violations in this case involve the serious neglect of multiple client matters, including financial matters. The assistant disciplinary counsel also asserts that "[i]t does not appear that respondent's misconduct has caused any harm in the [teaching certificate] matter, or in the Greene matter other than delay. In the Raven matter, it is impossible to determine if Ms. Raven would have been successful in her suit against [her employer]." This assessment, while accurate as to the first two matters, understates the harm for Raven who lost her right to pursue her claim because of the respondent's negligence.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provide that in the absence of aggravating or mitigating circumstances, suspension is generally appropriate when "(a) a lawyer knowingly fails to perform services

for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *Id.* at 4.42.

According to the complainant, the following aggravating factors are present in this case: the respondent has a record of prior discipline in the form of three letters of admonition involving neglect or failure to communicate, *id.* at 9.22(a); there are multiple offenses, *id.* at 9.22(d); and the respondent has substantial experience in the practice of law, *id.* at 9.22(i).

In mitigation, the assistant disciplinary counsel asserts that there is the absence of a dishonest or selfish motive, *id.* at 9.32(b); the presence of personal or emotional problems, *id.* at 9.32(c); a timely good faith effort to make restitution or to rectify the consequences of his misconduct, *id.* at 9.32(d); full and free disclosure to the disciplinary authorities, *id.* at 9.32(e); good character or reputation, *id.* at 9.32(g); and the presence of remorse, *id.* at 9.32(*l*).

The seriousness of the respondent's neglect and the harm as well as the potential for harm compel a long period of suspension with the requirement of reinstatement proceedings. After considering the gravity of the misconduct, the factors in mitigation and aggravation, and the financial and practice monitoring conditions applicable after reinstatement we have decided to accept the conditional admission and the recommendation of the inquiry panel.[2]

## III.

Accordingly, it is hereby ordered that George Case Price be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. It is also ordered that the respondent pay the costs of this proceeding in the amount of $1,385.56 within thirty days after

---

**2.** The inquiry panel rejected the respondent's suggestion in the conditional admission that he receive credit for the period of time beginning with his immediate suspension in 1995. We

agree that credit for this period is inappropriate, particularly given the respondent's admission that he practiced law during this time.

the announcement of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202. Upon any reinstatement, the respondent is ordered to comply with the conditions included in the conditional admission.