The PEOPLE of the State of
Colorado, Complainant,

v.

Daniel Falk BOYLE, Attorney–
Respondent.

No. 97SA222.

Supreme Court of Colorado,
En Banc.

Aug. 4, 1997.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

Arthur S. Nieto, Denver, for Attorney-Respondent.

PER CURIAM.

The respondent and the assistant disciplinary counsel executed a stipulation, agreement, and conditional admission of misconduct pursuant to C.R.C.P. 241.18. The parties agreed in the conditional admission to discipline in the form of a suspension from the practice of law in the range of one year and one day to two years. In approving the conditional admission, an inquiry panel of the supreme court grievance committee recommended that the respondent be suspended for two years. We accept the conditional admission and the panel's recommendation.

I.

The respondent was admitted to practice law in Colorado in 1976. The conditional admission encompasses the charges contained in three formal complaints and a pending request for investigation, and provides as follows.

A. No. GC 94A–141

1. The Sewells

In December 1991 Trevor and Valerie Sewell, citizens of Great Britain, retained the respondent to assist them in obtaining permanent residence in the United States. Mr. Sewell is an Audi auto mechanic.

The respondent instructed the Sewells that when they entered the United States they should tell immigration officials that they were visitors and not volunteer that they were going to work here. Thus, he advised the Sewells to enter the country on a B–1 visitor's visa even though he knew that Mr. Sewell was not eligible for a B–1 visa because he intended to obtain employment.

The respondent also gave the Sewells incorrect advice regarding their liability for payment of United States taxes on Mr. Sewell's earnings in the United States. He told them that since they would be paying taxes in England they need not pay taxes in this country.

Mr. Sewell traveled to Mexico in October 1992 as a mechanic on a performance race car team. When he reentered the country in Texas, he was questioned about his employment. He was granted a deferred inspection that had to take place in Denver no later than November 15, 1992. The Sewells contacted the respondent and he told them that he would handle the deferred inspection. He failed to do so, however, and Mr. Sewell was ultimately arrested by United States Immigration and Naturalization Service (INS) agents and detained overnight.

The respondent has also admitted that he failed to properly supervise his staff in relation to obtaining extensions on the Sewells' visas. He has stipulated that the foregoing conduct, which occurred prior to the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(2) (handling a legal matter without adequate preparation); DR 6–101(A)(3) (ne-

glecting a legal matter); and C.R.C.P. 241.6(4) (committing gross negligence).

### 2. Mohamad Rachid

Mohamad Rachid is a Syrian citizen who entered the United States in July 1982 as a student. He was authorized to stay as a non-immigrant student until January 30, 1984, but after his student visa expired, Rachid remained in this county illegally or out of status. Rachid retained the respondent in August 1987 who filed an asylum petition on his behalf on September 11, 1987. A hearing before an immigration judge was scheduled for October 16, 1989.

The respondent failed to prepare adequately for the hearing and failed to discover and present readily available evidence supporting the asylum petition. At the conclusion of the hearing, the immigration judge denied asylum and suspension of deportation. Rachid hired another lawyer who attempted to reopen the matter. According to the conditional admission, Rachid remains in Colorado pending the outcome of the motion to reopen and reconsider.

■ The respondent's conduct again violated DR 6–101(A)(2) (handling a legal matter without adequate preparation).

### B. GC 96A–22

### 1. Dalia Vardy

Dalia Vardy is an Israeli native who entered the United States as a visitor in 1988 and is involved in Jewish Ministry to children. She hired the respondent in June 1992 to obtain an alien registration receipt card (permanent resident status). The respondent quoted her a flat fee of $4,500. Vardy ultimately paid the respondent $2,000 of this amount. When she retained the respondent, she was doing volunteer work at the Aspen Jewish Center. The respondent instructed her not to mention her current employment as a teacher at the Aspen Jewish Center on the written employment history she was to provide to him.

The respondent submitted a labor certification application on Vardy's behalf claiming that shortly after Vardy arrived in the United States she had been employed for one year at a Jewish Center in Florida. This did not accurately reflect what she had told the respondent. She had advised him that she performed three months of volunteer services at that Center. The labor certification application was inadequately prepared by the respondent and was rejected three times. In November 1993, Vardy retained another lawyer who submitted an application for Vardy as a religious worker, which was granted.

■ The respondent has admitted that his conduct, which occurred before and after the effective date of the Rules of Professional Conduct, violated DR 6–101(A)(2) and Colo. RPC 1.1 (handling a legal matter without adequate preparation). By misrepresenting Vardy's work experience on the labor certification application, he violated DR 1–102(A)(4) and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

### 2. Ademar Shoji

Ademar Shoji, a Brazilian native, entered this country illegally in 1985. He remained in Southern California for a while and then traveled to Aspen, Colorado. Shoji hired the respondent in November 1992 after Shoji's California lawyer was unable to obtain a green card for him. Shoji was employed parttime in the summer and full-time in the winter as a cook at a restaurant in Aspen.

The respondent submitted a labor certification application on Shoji's behalf after conferring with one of the owners of the restaurant. The application states that Shoji's visa had expired even though the respondent knew that his client never had a visa. In addition, the owner of the restaurant denies that he ever signed the part of the application that purportedly has his signature on it. The respondent denies forging the owner's name and a handwriting expert has cleared the respondent of being the forger. The application was at all times in the control of the respondent's office or the owner.

■ Shoji decided to change counsel after INS agents came to his home and his place of employment on September 30, 1993 and obtained records. Shoji learned that the

INS was investigating the respondent for criminal wrongdoing. At that time he had paid the respondent $3,800 of the $4,500 fee. The respondent has admitted that his efforts on Shoji's behalf were not beneficial because the Department of Labor would not approve labor certification for a position which was seasonal and part-time. The respondent therefore violated DR 6–101(A)(2) and Colo. RPC 1.1 (handling a legal matter without adequate preparation). Moreover, by charging and collecting $3,800 for work that was of no benefit to his client, the respondent charged and collected an unreasonable or clearly excessive fee, contrary to DR 2–106(A) and Colo. RPC 1.5(a).

■ By misrepresenting that Shoji's visa had expired when his client never had a visa, allowing the certification application to be submitted with a falsified employer's signature, and by representing on the application that a certain employment position existed when it did not, the respondent violated DR 1–102(A)(4) and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

### C. No. GC 96C–152

Norman Risilia is a native of Albania who was naturalized in 1956. He retained the respondent to represent his nephew, Xheladin Kryeziu, who was arrested in Chicago by INS agents in February 1995 for operating under a fraudulent passport. Kryeziu was transferred to the Aurora W.W.C. Immigration Center where he was to be held pending a hearing scheduled for May 3, 1995. The fee agreement provided that the respondent would be paid $4,200 to represent Kryeziu. Risilia paid $3,500 of this amount. Because Kryeziu was detained at a point of entry into the United States, he was deemed never to have entered the country. Therefore, he was subject to exclusion proceedings rather than deportation proceedings and he was afforded fewer rights.

The respondent submitted an asylum petition on Kryeziu's behalf, claiming that his client faced persecution in Albania because he was a Kosovar Albanian. At the hearing, which was held on June 16, 1995, the respondent presented very little evidence showing specific persecution against Kosovars in Albania. He did not have either Kryeziu or Risilia testify regarding the imprisonment of Kryeziu's father in Albania. The immigration judge found the respondent's client excludable and ordered him deported.

The respondent explained Kryeziu's options after the denial of the asylum petition and the client waived his right to appeal. Believing Kryeziu to be a stateless person, the respondent discussed with Risilia the filing of a habeas corpus petition in the future. On July 31, 1995 Risilia heard from a friend that his nephew had been removed from the Aurora facility. He called the respondent the next day. The respondent filed the habeas corpus petition that same day. However, Kryeziu had been returned to Albania and the habeas corpus petition was dismissed as being moot.

■ The respondent has stipulated that he did not provide competent representation in this matter because he failed to produce sufficient evidence of the persecution of Kosovars in Albania at the hearing and because he relied on the filing of a habeas corpus petition, which was risky at best. He thereby violated Colo. RPC 1.1. He also admits failing to respond to some of Risilia's messages in violation of Colo. RPC 1.4(a).

### D. Federal Misdemeanor Conviction

As a result of the respondent's conduct in the Sewell matter, he was charged by information filed in the United States District Court for the District of Colorado with the misdemeanor offense of

aid[ing] and abet[ting] an alien in obtaining entry to the United States by a wilful misleading misrepresentation, to wit: [the respondent] did instruct his client Trevor Sewell to enter the United States on a B–1 visitor's visa when in fact, as [the respondent] well knew, Trevor Sewell was entering the United States to take employment as a contract laborer and was not eligible to enter the United States for that purpose under a B–1 visa.

All in violation of Title 8, United States Code, Section 1325(a) and Title 18, United States Code, Section 2.

On March 14, 1997, the respondent pleaded guilty to this misdemeanor offense, was assessed $510 as a fine and costs, agreed to voluntarily surrender his license to practice law in Colorado, and agreed to discontinue representing clients before the INS and the United State Department of Labor. The government interprets the forbearance to be forever.

 Although a misdemeanor, the offense to which the respondent pleaded guilty is a serious crime under C.R.C.P. 241.16(e)(2) because it involved misrepresentation and fraud. The respondent's conduct also violated Colo. RPC 8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer); Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); Colo. RPC 8.4(g) (engaging in conduct which violates accepted standards of legal ethics); and Colo. RPC 8.4(h) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law); as well as C.R.C.P. 241.6(5) (violating the criminal laws of a state or of the United States).

## II.

The conditional admission recommends that the respondent be suspended in the range of one year and one day to two years. The inquiry panel recommended that the respondent be suspended for two years. As part of the conditional admission, the respondent has agreed to return $3,800 to Ademar Shoji, the amount of legal fees Shoji paid to the respondent, and $2,000 to Norman Risilia.

The most serious misconduct in this case is the respondent's advice to his clients to make misrepresentations to the immigration authorities and the respondent's misrepresentations to the government in the Sewell, Vardy, and Shoji matters. The ABA *Standards for Imposing Lawyer Sanctions* 5.11 (1991 & 1992 Supp.), provides that in the absence of mitigating factors disbarment is generally warranted when:

(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; ... or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

We have disbarred lawyers in cases involving comparably serious crimes. *See, e.g., People v. Frye,* 935 P.2d 10, 11 (Colo.1997) (lawyer disbarred following convictions for conspiracy to commit securities fraud); *People v. Hilgendorf,* 895 P.2d 544, 545 (Colo. 1995) (conviction for making false statements to federal banks); *People v. Bollinger,* 859 P.2d 901 (Colo.1993) (conviction for mail fraud); *People v. Terborg,* 848 P.2d 346 (Colo.1993) (conviction for bank fraud); *People v. Brown,* 841 P.2d 1066 (Colo.1992) (conviction for bankruptcy fraud); *People v. Schwartz,* 814 P.2d 793 (Colo.1991) (conviction for bankruptcy fraud). A misdemeanor conviction does not necessarily call for a lesser sanction. The parties and the inquiry panel have agreed that a period of suspension is adequate under the following circumstances.

The harm actually sustained by the respondent's clients has been minimized by subsequent events. The Sewells' legal malpractice claim against the respondent has been settled for $40,000 and paid by the respondent's professional liability carrier. The Vardy matter was settled for $50,000 and satisfied. The Sewells and Ademar Shoji have been granted legal resident status, in large part because of their cooperation in the criminal investigation and prosecution of the respondent. The assistant disciplinary counsel notes that of the affected clients in this case, only Xheladin Kryeziu has been forced to leave the country and this was "primarily because his fear of prosecution claim was difficult if not impossible to establish."

The respondent has been required to discontinue representation of clients before the INS and Department of Labor. This is significant because in his twenty years of prac-

tice the respondent has concentrated primarily on immigration-related matters.

The assistant disciplinary counsel points out the following factors in mitigation. The respondent has made full and free disclosure during the disciplinary proceedings, *see* ABA *Standards* 9.32(e); other penalties or sanctions have been imposed on him, *see id.* at 9.32(k); the respondent has expressed remorse, *see id.* at 9.32(*l*); and the respondent's one prior disciplinary offense is remote in time, *see id.* at 9.32(m).

In aggravation, the respondent received a letter of admonition in 1981, *see id.* at 9.22(a); there is a pattern of misconduct, *see id.* at 9.22(c); multiple offenses, *see id.* at 9.22(d); the respondent's victims were vulnerable, *see id.* at 9.22(h); and he has substantial experience in the practice of law, *see id.* at 9.22(i).

We conclude that a suspension for two years under the circumstances of this case is a sufficient sanction to safeguard the public. We accept the conditional admission and the inquiry panel's recommendation. However, at least one member of the court would have rejected the conditional admission as too lenient.

### III.

Accordingly, it is hereby ordered that Daniel Falk Boyle be suspended from the practice of law for two years, effective thirty days after the release of this opinion. It is also ordered that prior to filing a petition for reinstatement the respondent must make restitution to (1) Ademar Shoji in the amount of $3,800 plus interest at the statutory rate from the date on this opinion; and (2) Norman Risilia in the amount of $2,000 plus interest at the statutory rate from the date on this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $7,872.53 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. Boyle shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)-(d).