**The PEOPLE of the State of Colorado, Complainant,**

v.

**Keith Dwight JOHNSON, Attorney–Respondent.**

**No. 97SA247.**

Supreme Court of Colorado, En Banc.

Sept. 15, 1997.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

Earl S. Wylder, Leonard M. Chesler, Denver, for Attorney–Respondent.

PER CURIAM.

In this disciplinary proceeding, an inquiry panel of the supreme court grievance committee approved a stipulation, agreement, and conditional admission of misconduct between the respondent and the assistant disciplinary counsel. *See* C.R.C.P. 241.18. In accordance with the conditional admission, the inquiry panel recommended that the respondent be suspended for one year and one day and be required to comply with certain conditions. We accept the conditional admission and the inquiry panel's recommendation.

## I.

The respondent was admitted to practice law in Colorado in 1978. The conditional admission provides the factual basis for this disciplinary proceeding.

### A. The Osmon Matter

#### i.

On December 22, 1992, Douglas Osmon and his parents retained the respondent to appeal Osmon's convictions for burglary, theft, and aggravated motor vehicle theft. The Osmons paid the respondent an advance fee and a $500 cost retainer. The respondent did not at that time have a client trust account or trust account registered with the Colorado Lawyer Trust Account Foundation (COLTAF). *See* Colo. RPC 1.15(e)(2). He did maintain a so-called "special" account for client funds. However, the respondent did not deposit the $500 cost retainer into his "special" account. The stipulation provides that the respondent did pay several expenses including the filing fee for Osmon's appeal in excess of the cost deposit.

The respondent filed the notice of appeal in Osmon's case on February 17, 1993. However, because the respondent did not file the opening brief when it was due, the court of appeals issued an order to show cause on July 20, 1993, why the appeal should not be dismissed. The court of appeals granted two motions for an extension of time filed by the respondent. Nonetheless, the respondent failed to file the opening brief. The court of appeals issued a second order to show cause why the appeal should not be dismissed. Be-

cause no response was filed, the court of appeals dismissed Osmon's appeal on September 7, 1993.

The respondent did, however, file a motion for reconsideration of his client's sentence before the trial court. Following a hearing on the motion to reconsider the sentence, Osmon's sentence on each count was reduced from eight years to seven years.

On May 1, 1994, Osmon terminated the respondent's legal services and requested an accounting of all unearned fees. The respondent did not provide a written accounting, although the respondent represents that he did provide an oral accounting, which Osmon disputes.

Osmon subsequently hired another lawyer who filed a motion for postconviction relief based on the respondent's ineffective assistance of counsel. On May 10, 1995, the district court ruled that the respondent's handling of the appeal amounted to the ineffective assistance of counsel.

From January through December 1993, the respondent failed to segregate his own funds from client funds in his "special" account, and he wrote checks on this special account for personal expenses. He also failed to keep proper records of client funds coming into his possession throughout his representation of Osmon.

The respondent has admitted that the foregoing conduct violated Colo. RPC 1.3 (neglecting a legal matter), Colo. RPC 1.4. (failing to communicate with a client), Colo. RPC 1.15(a) (failing to segregate and deposit client funds in a trust account and failing to keep client account records), Colo. RPC 1.15(b) (failing to account for client funds upon request); as well as C.R.C.P. 241.6(4) (committing gross negligence).

#### ii.

■ During the course of his representation, the Osmons gave the respondent a certain amount of funds to hold in case of an emergency since Osmon was in prison and Osmon's wife did not have a bank account. Although the individuals involved do not remember the exact amount that was given to

the respondent to hold for emergencies, they agree that a balance of $240 was owed to the Osmons when he was fired in May 1994. The respondent did not return the $240 nor has he accounted for it. He therefore again violated C.R.C.P. 241.6(4), Colo. RPC 1.15(a) and (b); and also Colo. RPC 1.16(d) (failing to surrender client property upon termination of representation).

### iii.

After he filed the notice of appeal in the Osmon case, Osmon's parents sent the respondent a cashier's check in the amount of $1,300 to pay the court reporter to transcribe the record. When the transcript was completed, the court reporter submitted a written statement to the respondent on April 15, 1993, reflecting a refund of $164 from the $1,300 received, and enclosing a check in that amount. The respondent deposited the $164 check into his "special" account on April 29.

The respondent wrote two personal checks on his "special" account in June 1993, and by July 1993, the "special" account had a balance of $41.70 in it. The respondent never notified Osmon's parents of the transcript refund and has not returned these funds to them. He used the majority of the funds for his personal purposes, and the parties have stipulated that the respondent thereby "negligently converted" these funds to his own use. The respondent admits that he again violated C.R.C.P. 241.6(4), Colo. RPC 1.15(b), and Colo. RPC 1.16(d).

### iv.

■ From January through December 1993, the respondent engaged in two non-sufficient funds transactions involving his "special" account, and twenty-two non-sufficient funds transactions in his personal account, in violation of C.R.C.P. 241.6(4), and Colo. RPC 8.4(h) (engaging in conduct that adversely reflects on fitness to practice law).

### B. The Tombling Matter

Georgia Tombling and her sisters hired the respondent in May 1989 to represent their mother's interests following an injury she sustained while at Villa Manor Care Center. In September 1989 they removed their mother from Villa Manor, and she died on September 24, 1989 from causes unrelated to the injury at Villa Manor.

Villa Manor filed a complaint in the Jefferson County Court against Georgia Tombling and her deceased mother seeking $3,779.22 for health care services from August 1 to September 5, 1989. The respondent was given the summons and complaint and he agreed to file an answer. Because he failed to do so, however, a default judgment was entered against Georgia Tombling and her mother.

On December 6, 1989, the respondent filed a complaint in Jefferson County District Court against Villa Manor on behalf of Georgia Tombling, her two sisters, and her mother's estate, alleging breach of contract and negligence. He filed a motion for relief from the default judgment in the county court on January 2, 1990. The court issued a ten-day stay of the judgment with the provision that the respondent set the matter for hearing by January 12. When the respondent failed to do so, the stay of execution of judgment expired.

Also on January 2,1990, the respondent filed in the district court a notice of suit pending in county court, and requested that the two separate actions be consolidated in the district court. *See* C.R.C.P. 313(b)(1), 7B C.R.S. (1984). Although the district court did consolidate the cases, the default judgment was not set aside.

The case was placed on the district court's arbitration docket on March 1, 1991. On respondent's motion, an arbitration hearing was set for October 3, 1991. On that date, the respondent, with the express knowledge and consent of the Tombling sisters, entered into a settlement discussion with Villa Manor's lawyer, proposing a settlement whereby Villa Manor's claims would be dismissed and Villa Manor would pay the Tombling sisters $3,000 in return for a release of their claims.

On November 11, 1991, however, the Tombling sisters notified the respondent that they would not enter into the settlement agreement. Four days later, having heard nothing from the parties' lawyers, the district court dismissed the Tombling sisters' action

against Villa Manor for failure to prosecute. The Tombling sisters hired new counsel, who subsequently resolved all of the issues between the Tomblings and Villa Manor.

The respondent's misconduct occurred prior to January 1, 1993, the effective date of the Rules of Professional Conduct, and he has stipulated that his neglect of the Tombling sisters' matter violated DR 6–101(A)(3).

■ Moreover, on January 21, 1994, the Tombling sisters filed a malpractice action against the respondent which resulted in a jury verdict in respondent's favor. However, the trial court assessed attorney fees of $875 against respondent because he failed to appear for his scheduled deposition in the case and did not respond to written discovery. The respondent did not pay the attorney fees until two years later, in August 1996. His conduct violated Colo. RPC 8.4(d) (engaging in conduct prejudicial to the administration of justice).

## II.

■ The inquiry panel approved the conditional admission, including the recommendation that the respondent be suspended for one year and one day and be required to comply with certain special conditions prior to and after reinstatement.

Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & 1992 Supp.) (ABA *Standards* ), in the absence of aggravating or mitigating circumstances, "[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *Id.* at 4.42.

The parties have stipulated that the following aggravating and mitigating circumstances are present in this case. The respondent received a letter of admonition in 1989 for handling a legal matter without adequate preparation, *see id.* at 9.22(a) (prior discipline is an aggravating circumstances for discipline purposes); there is a pattern of misconduct and there are multiple offenses, *see id.* at 9.22(c), (d); and the respondent has substantial experience in the practice of law,

*see id.* at 9.22(i). In mitigation, during the time of the misconduct in this case the respondent was experiencing personal and emotional problems, *see id.* at 9.32(c); he has made full and free disclosure during these disciplinary proceedings, *see id.* at 9.32(e); and the respondent is remorseful for his conduct in the Osmon and Tombling matters, *see id.* at 9.32(l ).

As the parties point out, we have found a period of suspension for one year and one day to be appropriate in analogous cases. *See, e.g., People v. Paulson,* 930 P.2d 582, 584–85 (Colo.1997) (lawyer suspended for one year and one day for neglecting multiple client matters and failing to communicate with clients; lawyer had previously received a letter of admonition); *People v. Price,* 929 P.2d 1316, 1320 (Colo.1996) (neglecting of multiple client matters, including financial matters and trust account violations); *People v. Fager,* 925 P.2d 280, 283 (Colo.1996) (neglecting multiple client matters and failing to account for client funds).

Given the seriousness of the misconduct, we agree that suspension for one year and one day, with its requirement that the respondent petition for reinstatement and demonstrate that he is again fit to practice law, in conjunction with the special conditions that the respondent has agreed to, constitutes an adequate and proper sanction in this case. Accordingly, we accept the conditional admission and the inquiry panel's recommendation, including the special conditions.

## III.

It is hereby ordered that Keith Dwight Johnson be suspended from the practice of law for one year and one day, effective thirty days after this opinion is issued. Prior to reinstatement, and as a precondition to reinstatement, the respondent is ordered to comply with the conditions contained in the Appendix to this opinion. He must also, as a condition of reinstatement, establish that there are no medical, psychological, or emotional bases that impair his ability to fulfill his responsibilities as a lawyer. The respondent is further required as a condition for reinstatement to pay restitution to the Os-

mons in the amount of $240, plus statutory interest from May 16, 1994, and $164, with statutory interest from April 15, 1993. The respondent is also ordered to pay the costs of this proceeding in the amount of $1,443.27 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202, within thirty days of the date of this opinion. The respondent shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)–(d).

## APPENDIX

to the Colorado Supreme Court Opinion in
*People v. Johnson*, No. 97SA247:

7. The parties further stipulate that prior to reinstatement and as conditions of reinstatement, the respondent shall:

a. establish that he has consulted with a licensed mental health or medical professional and that he is mentally, physically, and emotionally fit to practice law;

b. submit a plan through which the management of his clients' legal matters and his professional progress will be monitored by another lawyer for two years after reinstatement. Any such plan should permit the respondent to apply to the grievance committee for termination of monitoring upon showing that it is no longer necessary; and

c. the respondent will maintain the following minimum records as to all bank accounts instituted or utilized by him, including specifically a COLTAF trust account, in any fashion whatsoever in the practice of law:

i) original or duplicate deposit slips and cash receipts book, clearly identifying the date and source of all funds received and the client or matter for which the funds were received;

ii) original canceled checks, all of which must be numbered consecutively;

iii) other documentary support for all disbursements and transfers from the account;

iv) a separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers and the account balance, and containing at least an identification of the client or matter for which the funds are received, disbursed, or transferred; the date on which all funds were received, disbursed or transferred; the check number for all disbursements; the reason for which all funds were received, disbursed or transferred;

v) a separate file or ledger with individual entries for each client or matter showing all individual receipts, disbursements, or transfers in any unexpected balance, and containing the identification of the client or the matter for which the funds were received, disbursed or transferred; the date on which all funds were received, disbursed or transferred; the check number for all disbursements; and the reason for which all funds were received, disbursed or transferred; and

vi) all monthly statements for all accounts.

d. The respondent shall also direct any financial institution where he is a signatory on any bank account utilized in the practice of law to notify the Office of Disciplinary Counsel, 600 17th Street, Suite 510–South, Denver, Colorado 80202, in the event any law firm or trust account check is returned due to insufficient funds or uncollected funds, absent bank error. Further, if any such check is returned, the respondent shall likewise notify the office of disciplinary counsel.

e. The respondent shall file a written report with the office of disciplinary counsel each year for a period of three years beginning one year from the reinstatement order regarding the satisfactory maintenance of the financial aspect of his law practice and demonstrating his compliance with the conditions set forth above. The report shall contain the certificate of a certified public accountant verifying that the procedures set forth above were followed and that an audit demonstrated no irregularities in the handling of the operating and trust accounts. Said audit and

report shall be conducted and complied with at the respondent's sole expense.