**The PEOPLE of the State of Colorado, Complainant,**

v.

**Rory SEGAL, Respondent.**

**Nos. 01PDJ027, 01PDJ047.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Feb. 6, 2002.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, CORINNE MARTINEZ CASIAS, a member of the bar, and PAT CORTEZ, a representative of the public.

## REPORT, DECISION AND IMPOSITION OF SANCTION

*SANCTION IMPOSED:* ATTORNEY SUSPENDED FOR EIGHTEEN MONTHS, EIGHT MONTHS STAYED FOLLOWED BY A ONE YEAR PERIOD PROBATION.

A sanctions hearing pursuant to C.R.C.P. 251.15 was held on December 6, 2001, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Corinne Martinez Casias, a member of the bar, and Pat Cortez, a representative of the public. Charles E. Mortimer, Jr., Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). The respondent, Rory Segal ("Segal"), appeared on his own behalf.

The Complaint in Case No. 01PDJ027 was filed on March 19, 2001, and the Complaint in Case No. 01PDJ047 was filed on April 27, 2001. Segal did not file Answers to the Complaints. On June 27, 2001, the People moved for default in both cases and for consolidation, Segal did not respond, and the PDJ granted the motion and consolidated the two matters on July 19, 2001. On July 19, 2001, the PDJ issued an Order granting default, stating that all factual allegations set forth in the Complaints were deemed admitted pursuant to C.R.C.P. 251.15(b). The default Order also established that several violations of The Rules of Professional Conduct ("Colo.RPC") alleged in the Complaints were deemed admitted. The PDJ denied default in Case No. 01PDJ027 on claim four as to Colo. RPC 3.4(c)(a lawyer shall not knowingly disobey an obligation under the rules of a tribunal) and granted default in part and denied default in part on C.R.C.P. 251.5(c)(any act or omission which violates [the Rules of Professional Conduct] or which violates an order of discipline or disability).[1]

---

1. Default was granted on C.R.C.P. 251.5(c) on Segal's failure to comply with the notice provisions of C.R.C.P. 251.28(d), requiring him to file an affidavit with the Supreme Court upon being administratively suspended, and default was denied on all other grounds; *i.e.* that no allegation of state of mind with regard to Segal's violation of Colo. RPC 3.4(c) as grounds for discipline

Default was granted in part and denied in part on Colo. RPC 3.4(e)(a lawyer shall not in trial ... assert personal knowledge of facts in issue ... or state a personal opinion as to the ... credibility of a witness ...) in claim five.[2] In Case No. 01PDJ047, the PDJ denied default as to Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, [including] surrendering papers and property to which the client is entitled) in claim three and Colo. RPC 3.4(c)(a lawyer shall not knowingly disobey an obligation under the rules of a tribunal) and Colo. RPC 8.1(b)(a lawyer shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority) in claim four. The claims upon which default did not enter were dismissed by Order dated August 8, 2001.

At the sanctions hearing, the People presented evidence from Shirley Medina. Exhibits 1 through 4 were offered by the People and admitted into evidence. The PDJ and Hearing Board considered the People's argument, the facts established by the entry of default, the exhibits admitted, assessed the testimony and credibility of the witness and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Segal has taken and subscribed to the oath of admission, was admitted to the bar of the Supreme Court on May 23, 1996, and is registered upon the official records of this court, registration number 26867. Segal is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

All factual allegations set forth in the Complaints in this consolidated matter were deemed admitted by the entry of default. The facts set forth therein are therefore established by clear and convincing evidence. *See* Complaints attached hereto as exhibits 1 and 2.

## II. CONCLUSIONS OF LAW

The entry of default established the following violations of The Colorado Rules of Professional Conduct in this consolidated matter: Colo. RPC 5.5(a)(a lawyer shall not practice law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction); five separate violations of Colo. RPC 1.3(a lawyer shall act with reasonable diligence and promptness in representing a client), three separate violations of Colo. RPC 8.4(d)(engaging in conduct prejudicial to the administration of justice); Colo. RPC 3.4(e)(in trial, assert personal knowledge of the facts in issue), and two separate violations of Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information). Segal's appearing on behalf of a client while under administrative suspension and failing to comply with the notice provisions of C.R.C.P. 251.28(d) constitutes grounds for discipline pursuant to C.R.C.P. 251.5(c)(any act or omission which violates [the Rules of Professional Conduct] or which violates an order of discipline or disability).

Following his administrative suspension for failure to pay attorney registration fees, Segal failed to comply with the notice provisions of C.R.C.P. 251.28(d)(requiring an attorney to file an affidavit with the supreme court notifying the court of the attorney's pending matters) constituting grounds for discipline under C.R.C.P. 251.5(c)(any act or omission which violates these Rules or which violates an order of discipline or disability). Segal violated Colo. RPC 5.5(a)(a lawyer shall not practice law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction) by appearing on behalf of a client in a criminal matter while under administrative suspension from the practice of law. Segal's violation of Colo. RPC 5.5(a) by practicing law while under administrative suspension constitutes grounds for discipline pursuant to C.R.C.P. 251.5(c)(any act or

under C.R.C.P. 251.5(c) was pled in the Complaint.

2. Default was granted as to Segal asserting his personal knowledge of the facts in issue in the course of trial, and denied as to Segal stating his personal opinion on the credibility of a witness.

omission which violates these Rules or which violates an order of discipline or disability).

■ Segal engaged in various forms of neglect with regard to five separate clients in violation of Colo. RPC 1.3(a lawyer shall act with reasonable diligence and promptness in representing a client): he failed to appear at scheduled court matters; he failed to take adequate actions on behalf of a client with regard to a breach of contract claim; he failed to appear for a client's sentencing hearing and the rescheduled hearing; he failed to return phone calls to a separate client and replacement counsel; and he failed to set a hearing to modify child custody or communicate adequately with the client despite the client's repeated attempts to contact him.

■ In two matters, Segal violated Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information) by failing to communicate with his clients. By failing to appear on behalf of clients in two matters, and appearing while under administrative suspension in one matter, Segal violated Colo. RPC 8.4(d)(it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice) by causing the court to schedule additional hearings due to Segal's actions. In one matter, the court permitted Segal's client to change his plea and request a preliminary hearing; the client had waived his right to a preliminary hearing while represented by Segal when he was under administrative suspension. Segal violated Colo. RPC 3.4(e)(a lawyer shall not, in trial, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause) in one instance by asserting his personal knowledge of facts in issue in the course of trial.

### III. SANCTION/IMPOSITION OF DISCIPLINE

Segal's most serious misconduct is his pattern of neglect with regard to five separate clients, failing to adequately communicate with his clients in two matters, and continuing to practice law after being suspended.

In one matter, Segal misrepresented to the client that he was a licensed attorney when he had been administratively suspended. Segal's representing a client while under administrative suspension and failing to appear for scheduled conferences resulted in prejudice to the administration of justice.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. ABA *Standard* 4.42 provides that suspension is generally appropriate when:

(b) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(c) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

■ The Commentary to ABA *Standard* 4.42 provides that "[s]uspension should be imposed when a lawyer knows that he is not performing the services requested by the client, but does nothing to remedy the situation, or when a lawyer engages in a pattern of neglect, with the result that the lawyer causes injury or potential injury to a client." The presumptive sanction recommended by ABA *Standard* 4.42 depends on the degree of injury or potential injury occasioned by the lawyer's misconduct. *Compare* ABA *Standard* 4.41, recommending disbarment rather than suspension for neglect resulting in serious injury or potentially serious injury. Although Segal's misconduct was egregious and resulted in forestalling the resolution of his clients' matters, there is no evidence that his misconduct resulted in serious injury to his clients.

■ Colorado case law uniformly holds that a period of suspension is warranted, absent significant mitigation, where the attorney engages in multiple instances of neglect. The length of the suspension is determined by the number of clients affected and the degree of injury to the clients. *See People v. Rishel,* 956 P.2d 542, 543 (Colo.1998)(attorney suspended for one year and one day in default proceeding with the requirement of a reinstatement proceeding

and payment of restitution where attorney neglected two clients); *People v. Hohertz*, 926 P.2d 560, 565(Colo.1996)(attorney suspended for three years pursuant to a conditional admission of misconduct with conditions on reinstatement for, among other rule violations, neglect of five separate client matters and failure to inform a client of his suspension from the practice of law); *People v. Berkley*, 914 P.2d 338, 341 (Colo.1996)(attorney suspended for one year and one day for neglect of five separate matters and three instances of previous discipline); *People v. Clark*, 900 P.2d 129, 130 (Colo.1995)(attorney suspended for one year and one day for, among other rule violations, failing to comply with mandatory continuing legal education requirements, and continuing to practice law after administrative suspension); *People v. Schmeiser*, 35 P.3d 560, (Colo. PDJ 2001), 2001 Colo. Discipl. LEXIS 25 (attorney suspended for one year and one day in default proceeding with requirement of reinstatement and payment of restitution for pattern of misconduct including allowing critical deadlines to pass without performing the required services, failing to communicate with his clients, and failing to protect his clients' interests or return necessary documents and property upon termination).

 Determination of the appropriate sanction requires the PDJ and Hearing Board to consider aggravating and mitigating factors. The facts deemed admitted in the Complaint establish two aggravating factors pursuant to ABA *Standard* 9.22: Segal engaged in a pattern of misconduct, *see id.* at 9.22(c), and he engaged in multiple offenses, *see id.* at 9.22(d). In mitigation, Segal has had no prior disciplinary offenses, *see id.* at 9.32(a).

Although Segal did not initially participate in these disciplinary proceedings, the PDJ and Hearing Board note that he flew from California to represent himself at the sanctions hearing. Segal sincerely expressed remorse for his past actions, which may be considered by the PDJ and Hearing Board as a mitigating factor, *see id.* at 9.32(*l*). Segal acknowledged that he handled the cases giving rise to this consolidated matter incorrectly, and took full responsibility for his misconduct. Segal admitted that a period of suspension was warranted, but emphasized his strong desire to be an upstanding member of the bar in Colorado.

The PDJ and Hearing Board find that under Colorado case law a period of suspension is warranted for Segal's five instances of neglect, two instances of failing to communicate with clients, appearing once on behalf of a client while under administrative suspension, engaging in conduct prejudicial to the administration of justice, and Segal's assertion of his personal knowledge of facts in issue during the course of a trial. However, Segal's appearance from out of state at the sanctions hearing, his sincere remorse for his prior actions, and his recognition that his misconduct arose from inexperience and difficulty in managing a solo practice persuades the PDJ and Hearing Board that although a substantial period of suspension is called for under existing law, with appropriate conditions imposed upon Segal's practice of law as a condition of probation, it is unlikely that he will harm the public and, by virtue of the nature of those conditions, he can be adequately supervised. If Segal satisfactorily completes the period of suspension and the probationary period, no reinstatement proceeding under C.R.C.P. 251.29(d) will be required.

## IV. ORDER

It is therefore ORDERED:

1. RORY SEGAL, attorney registration number 26867 is suspended from the practice of law effective thirty-one days from the date of this Order for a period of eighteen months, with eight months stayed, followed by one year probation, on the following conditions:

A. Practice monitoring shall be required for a period of one year commencing with Segal's return to the practice of law in Colorado or elsewhere in accordance with the following terms:

(1) An attorney approved by Attorney Regulation Counsel shall monitor Segal's law practice for one year in accordance with these conditions. Segal shall identify the proposed monitor to the Attor-

ney Regulation Counsel at least 30 days prior to returning to the practice of law.

(2) As Segal acquires clients, he shall notify the monitor and provide an initial summary of the client's matter and any action he intends to take. Segal shall prepare and provide to the monitor a timeline for each open case showing deadlines for various actions. On subsequent lists, Segal shall note whether the deadlines have been met and shall identify any additional action that has been taken;

(3) The monitor shall review Segal's tickler and calendar system initially and then at least twice more, at approximately months six and twelve after the monitor's monitoring period begins;

(4) Segal shall brief the monitor on his method of accounting for fees (including trust funds). Initially, and at six-month intervals, Segal shall provide proof to the monitor of the existence of a trust account for any client retainers, advance fees or other funds held for clients or third parties arising from his law practice. The monitor need not audit Segal's accounts or finances, but should determine whether Segal has a ledger or other system which reasonably appears to accomplish Segal's safeguarding and accounting obligations under Colo. RPC 1.15 or similar rules in other jurisdictions. If the monitor has any unresolved concerns about Segal's financial accounting, the monitor should notify the Attorney Regulation Counsel, which may investigate further or suggest resolution of the concerns. Segal is responsible for providing complete and accurate information to the monitor, understanding that the effectiveness of the monitor's oversight depends on the information provided by Segal;

(5) The one year period of monitoring applies regardless of the date Segal returns to the practice of law;

(6) The monitor shall notify the Attorney Regulation Counsel of any concerns requiring more extensive monitoring. Segal shall comply with any increased monitoring requirements directed by the monitor or the Attorney Regulation Counsel;

(7) The monitor will notify the Attorney Regulation Counsel of any serious deficiencies in Segal's capability to handle the current or an increased caseload, or capability to handle a particular case. The monitor need not investigate the deficiencies fully, but may request further investigation by the Attorney Regulation Counsel;

(8) The monitoring shall be at Segal's own expense;

(9) The monitor will take into account Segal's geographical location in setting the schedule and conditions for review and deciding upon a telephonic or an in-person conference;

(10) The monitor shall send the Attorney Regulation Counsel a letter report monthly to summarize the monitor's actions to meet the responsibility under the monitoring agreement. The monitor should note Segal's compliance with the calendaring, tickling, accounting and other requirements set forth under this monitoring plan. Any issues or concerns that were addressed by the monitor and Segal, and the resolution of those issues (or the lack of resolution) should be included in the report. The Attorney Regulation Counsel reserves the right to require a more detailed written or oral report from the monitor, or to conduct an investigation of Segal's compliance with the conditions;

(11) The monitor is not expected to provide substantive legal advice to Segal about any of his cases or any legal issues pertaining to his cases. Segal understands that he must make his own decisions about each case, and may need to associate with a more experienced attorney in a particular area. The monitor cannot serve as a consultant on the handling of cases;

(12) Segal shall ensure that appropriate releases are obtained to allow the monitor to review any of Segal's files that the monitor believes may be necessary in carrying out the monitoring functions, although it is not anticipated that the

monitor will be required to do this if Segal provides accurate timelines and summaries. If the monitor believes that it is necessary to discuss information with Segal that otherwise may be subject to the attorney-client privilege between Segal and his client(s) then Segal shall ensure that appropriate client releases are sought promptly and shall confer with the monitor in advance on the language of the releases;

(13) Segal shall hold the monitor harmless from any claims of malpractice by his clients. As noted above, Segal is solely responsible for providing appropriate legal services for each client, and Segal specifically agrees to this.

(14) If the approved monitor is no longer willing or able to serve as a monitor, the monitor should notify Segal and Attorney Regulation Counsel promptly and in writing. Segal is responsible for providing an alternate candidate for consideration by Attorney Regulation Counsel within ten (10) days of receipt of the monitor's written notice.

B. Segal shall complete two Continuing Legal Education courses within the next eighteen months which focus on the Colorado Rules of Professional Conduct and law office management;

C. Segal shall not practice as a solo practitioner during the period of probation;

D. Segal shall continue the counseling and therapy sessions he is presently engaged in during the period of probation, unless earlier terminated upon the written recommendation of his treating counselor/therapist.

## EXHIBIT 1

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251 .9 through 251.14, and it is alleged as follows:

The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on May 23, 1996, and is registered upon the official records of this court, registration No. 26867. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 1200 Madison, # 654, Denver, Colorado 80206, 303–778–0921.

### *The Mares Matter, 00–01491*

On November 30, 1999, the respondent was suspended from the practice of law in the State of Colorado for failing to pay his attorney registration fees.

On December 3, 1999, while suspended from the practice of law, respondent appeared in Colorado State District Court on behalf of Mr. Rodriguez in a single proceeding involving three separate criminal matters. At that proceeding, Mr. Rodriguez waived his right to a preliminary hearing and a plea hearing was scheduled for December 21, 1999. The minute order from the December 3 proceeding indicated that respondent entered his appearance on behalf of Mr. Rodriguez on that date.

On December 21, 1999, the respondent again appeared on behalf of Mr. Rodriguez in a single proceeding in involving the three criminal matters. A motions hearing was scheduled for February 1, 2000.

On December 23, 1999, the respondent was reinstated to the practice of law.

On January 10, 2000, respondent filed a written entry of appearance on behalf of Mr. Rodriguez.

On February 1, 2, and 18, 2000, respondent failed to appear at scheduled court appearances on behalf of Mr. Rodriguez. Respondent failed to file any motions to withdraw in the three matters.

On March 28, 2000, Mr. Rodriguez was allowed to change his plea and request a preliminary hearing, because at the time he had waived his right to a preliminary hearing and entered his plea he'd been represented by respondent who was under suspension.

### *CLAIM I*

All prior averments are incorporated herein.

Respondent violated Colo. RPC 5.5(a) and C.R.C.P. 251.5(c) by practicing law in the State of Colorado while his license to do so was suspended.

WHEREFORE, complainant seeks relief as set forth more fully below.

### CLAIM II

The averments of paragraphs 1 through 8 are incorporated herein.

Respondent's failure to appear on behalf of Mr. Rodriguez at three separate court appearances violated Colo. RPC 1.3 and 8.4(d).

WHEREFORE, complainant seeks relief as set forth more fully below.

### CLAIM III

The averments of paragraphs 1 through 8 are incorporated herein.

Respondent violated Colo. RPC 8.4(d) by appearing in court on behalf of Mr. Rodriguez at the time respondent's license to practice law in Colorado had been suspended and, at that time, taking action on Mr. Rodriguez' behalf which required subsequent court proceedings to correct.

WHEREFORE, complainant seeks relief as set forth more fully below.

### CLAIM IV

The averments of paragraphs 1 through 8 are incorporated herein.

After he was suspended from the practice of law, respondent failed to give notice to his clients as required by C.R.C.P. 251.8(b), failed to give notice to parties in litigation as required by C.R.C.P. 251.8(c), and failed to file an affidavit with the Supreme Court as required by C.R.C.P. 251.28(d). Each of respondent's violations of C.R.C.P. 251.28 constitutes a violation of Colo. RPC 3.4(c) and 251.5(c).

WHEREFORE, complainant seeks relief as set forth more fully below.

### The Benjamin Matter, 00–00969

On March 3, 1999, Mr. Benjamin was involved in a "road rage" incident with a person named Sian Martins. Benjamin was alleged to have thrown a bottle at Ms. Martins' car. Benjamin was alleged to have left the scene of the incident. Martins' reported Benjamin's license plate to the Aurora Police, who responded to the scene and observed broken glass at the scene of the incident. Thereafter, the police tried to contact Benjamin at his home. Initially, Benjamin was not at home and police left information with Benjamin's girlfriend. Benjamin subsequently contacted respondent and the respondent came to Benjamin's home and was present when the police returned later that evening to interview Benjamin regarding the incident.

Respondent did not inform the officer who interviewed Benjamin at his home that he was representing Benjamin. The respondent was dressed in a t-shirt and jeans, and the officer assumed that the respondent was a visitor or resident at Benjamin's home.

At the conclusion of the interview, the officer issued Benjamin a citation and complaint for reckless driving and injury to property.

Benjamin's first appearance date was April 15, 1999. Respondent appeared with Benjamin and entered his appearance as Benjamin's attorney in the matter. Benjamin was arraigned, plead not guilty, and the matter was set directly for jury trial on June 10, 1999.

At trial, the police officer who had interviewed Benjamin at his home while respondent was present testified concerning the interview. The police officer testified that the respondent was never introduced to her as Benjamin's attorney.

On the following day, the trial reconvened. At the beginning of the proceedings, respondent requested a mistrial, claiming that: "The police officer that was testifying was testifying about statements that were made in my presence. Several other statements were flat out lies. It goes against my personal knowledge...." Respondent stated, further: "I was present there, Mr. Benjamin introduced me as his attorney...." This was the first time the respondent disclosed his presence at the police interview to the court

or the county attorney. The court inquired of the respondent what his testimony would be if he were to testify, and respondent stated that he would testify that the "testimony of the officer was false and that there was no mention of alcohol [made by Benjamin during the interview]" and that there was "no glass in the road." The court denied respondent's motion for mistrial. Thereafter, during closing argument, respondent stated to the jury:

"There were comments made by the police officer that he [Benjamin] drank, that he acknowledged drinking that night. And no, it is not relevant to the facts as the judge advised. It is relevant to the fact that this was a conscious [sick] and deliberate attempt by this police officer sitting right here to draw another link, a false link, a lie. It is a flat-out-lie. You heard testimony that I was present in the home for the purpose of advising Mr. Benjamin, not as his friend, that Mr. Benjamin called me, that I am present in there. She is lying."

Further, respondent stated to the jury that the police officer's testimony was "complete and utter lies."

### CLAIM V

The averments of paragraphs 1, and 17 through 22, are incorporated herein.

Respondent violated Colo. RPC 3.4(e) by asserting personal knowledge of facts in issue, and by stating his personal opinion as to the credibility of the police officer, at the trial of the Benjamin matter.

WHEREFORE, complainant seeks relief as set forth more fully below.

### The Medina Matter, 00–02256

During 1998, Ms. Shirley Medina contracted with a builder to put a modular home on some land she had purchased. The builder breached the contract and placed a substantial lien of over $70,000.00 on Medina's land.

In September 1998, Medina paid respondent a $1,000.00 retainer to assist her in getting the lien removed from the property. Medina was referred to the respondent by Mr. Jerry Aragon, who worked as an investigator with the respondent. In September 1998, respondent requested that Ms. Medina give her construction documents to Mr. Aragon; Mr. Aragon was going to conduct investigation for the respondent. Thereafter, for the next six months, respondent told Medina that "things are moving along fine." By May of 1999, Medina had difficulty communicating with the respondent. The respondent's cell phone number had changed and the telephone number she had for the respondent was not in service. Thereafter, Medina called Aragon in attempt to retrieve her paperwork. Respondent had told Medina that Aragon had her paperwork, but Aragon told Medina that respondent had her construction paperwork.

In July 1999, Medina obtained a new telephone number for the respondent. Having become disappointed in the respondent's lack of interest in pursuing the case, Medina requested her file back. In response, the respondent agreed to find her file and finish her case.

On July 9, 1999, respondent returned Medina's file to her. The file was damaged by water and her original contract with the modular home builder was missing. The respondent reported to Medina when he returned the file to her that if he needed the contract to resolve the matter, he would obtain a copy from the homebuilder. Further, the respondent told Medina that he had discussed the matter with an attorney for the builder, and that the builder would agree to release the lien against her property if she would agree to release the builder from all liability.

In March 2000, the respondent told Medina that he had some papers for her to sign, and that the land would then be hers free and clear, and the case would be resolved. Respondent told Medina that he would send the paperwork to her by mail. Medina waited three weeks, but did not receive anything from the respondent. Medina then began attempting to reach the respondent by telephone by calling him everyday for about four weeks. Respondent never returned any of her telephone messages.

In April 2000, Medina was finally able to make contact with the respondent by telephone. Respondent told her that he had sent the paperwork to her, but that he might have sent the paperwork to her sister's address, and that he would bring the papers to her home for her to sign. Thereafter, the complainant did not hear from the respondent.

### CLAIM VI

The averments of paragraphs 1 and 25 through 30 are incorporated herein.

Respondent neglected Medina's dispute with the homebuilder in violation of Colo. RPC 1.3.

WHEREFORE, complainant seeks relief as set forth more fully below.

### CLAIM VII

The averments of paragraph 1 and 25 through 30 are incorporated herein.

Respondent failed to communicate with Medina concerning the status of her matter in violation of Colo. RPC 1.4(a).

WHEREFORE, complainant seeks relief as set forth more fully below.

### The Russell Matter, 00–04069

Respondent represented Kevin Loggins on criminal charges in *People v. Kevin E. Loggins,* Case No. 97CR3532, in Arapahoe County District Court. On September 14, 2000, Mr. Loggins was scheduled to be sentenced following his conviction for 2nd degree burglary, a class three felony, and criminal mischief, a class four felony. Respondent failed to appear for the sentencing, and the matter was reset until October 12, 2000.

On October 12, 2000, the respondent again failed to appear.

The minute order of that day reflects that the "Div.staff has attempted to contact attorney to advise of new date." The matter was rescheduled to November 13, 2000. Respondent appeared approximately three hours late at the November proceeding.

The complainant states that respondent had knowledge of each of the sentencing dates at which he failed to appear.

When respondent appeared in November, a December date was scheduled. Respondent appeared on time in December. Loggins was then sentenced.

### CLAIM VIII

The averments of paragraphs 1 and 35 through 39 are incorporated herein.

Respondent violated Colo. RPC 1.3 by neglecting Mr. Loggins' matter.

WHEREFORE, complainant seeks relief as set forth more fully below.

### CLAIM IX

The averments of paragraphs 1 and 35 through 39 are incorporated herein.

Respondent engaged in conduct prejudicial to the administration of justice by failing to appear for Mr. Loggin's sentencing, as described above, in violation of Colo. RPC 8.4(d).

WHEREFORE, complainant seeks relief as set forth more fully below.

### The Huckin Matter, 00–04328

Respondent represented Charlotte Huckin on drug charges in *People v. Charlotte Huckin,* Case No. 00–CR1305, in Denver District Court.

In June of 2000, Ms. Huckin was charged with drug possession. In July of 2000, Ms. Huckin retained the respondent and paid him $600.00 to represent her. Respondent represented Ms. Huckin during initial stages of the matter. However, Ms. Huckin failed to appear at a proceeding scheduled in the case.

Subsequently, Ms. Huckin was charged with other crimes in Arapahoe County and was represented by court-appointed counsel, Michael Andre. Mr. Andre then agreed to represent Ms. Huckin in the Denver drug court matter in which respondent was representing her.

In November and December 2000, Huckin's mother attempted to contact respondent at his business and cell telephone num-

bers. Respondent's business telephone number was disconnected. Huckin's mother was attempting to reach the respondent to request that he withdraw from Huckin's pending criminal matter in Denver, since Mr. Andre agreed to represent Ms. Huckin in that matter.

On November 30, December 1, December 4, and December 5, 2000, Mr. Andre left messages on the respondent's voice mail. Respondent failed to return Mr. Andre's calls, or to make any efforts to contact Huckin concerning the substance of Mr. Andre's calls or her legal status, generally.

On or about December 6, 2000, Mr. Andre filed a motion for substitution of counsel and a motion to set a sentencing hearing in the Denver District Court matter. On December 7, 2000, Mr. Andre's motion was granted.

Respondent had never filed a motion to withdraw as counsel for Ms. Huckin in the Denver District Court matter.

### CLAIM X

All the averments of paragraphs 1 and 44 through 50 are incorporated herein.

Respondent violated Colo. RPC 1.3 by neglecting the Huckin matter.

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct and that he be appropriately disciplined and assessed the costs of these proceedings.

### EXHIBIT 2

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251 .9 through 251.14, and it is alleged as follows:

The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on May 23, 1996, and is registered upon the official records of this court, registration No. 26867. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 1200 Madison,

# 654, Denver, Colorado 80206, and his registered home address is 3725 South Lincoln, Englewood, Colorado 80110.

Rhonda Davis hired respondent to represent her in connection with a contempt citation filed against her and concerning post-decree child custody issues in a dissolution of marriage action. Davis retained respondent in July or August of 1999 and paid him a $400.00 retainer at that time.

Respondent appeared with Davis at a hearing of the contempt citation in August, 2000. The citation was dismissed. Davis then asked respondent to set a hearing date on a Motion to Modify Child Custody that was pending. Respondent did not set the motion for hearing.

For months thereafter, Davis attempted to contact respondent by telephone, but was unable. Davis would constantly leave messages for respondent, but respondent would not return them.

On December 13, or December 14, 2000, Davis left respondent a telephone message stating that she was terminating his services and requesting that he return any unearned fees. Thereafter, respondent returned Davis' telephone message and requested a meeting, which was scheduled.

Respondent failed to appear for the scheduled meeting. Accordingly, Davis' husband left respondent a voice-mail message on December 18, 2000 reiterating the fact that respondent was terminated as Davis' attorney.

Davis hired new counsel to represent her in the domestic relations matters.

Respondent failed to respond to the request for investigation in this matter after it was mailed to his registered addresses.

### CLAIM I

All prior averments are incorporated herein.

Respondent neglected Davis' legal matter, in violation of Colo. RPC 1.3.

Wherefore, complainant seeks relief as set forth more fully below.

## CLAIM II

All prior averments are incorporated herein.

Respondent failed to communicate with Davis concerning the status of her legal matter and failed to promptly return her reasonable requests for information, in violation of Colo. RPC 1.4(a).

Wherefore, complainant seeks relief as set forth more fully below.

## CLAIM III

All prior averments are incorporated herein.

Respondent failed to return property and unearned fees to Davis at the time he was terminated as her attorney, in violation of Colo. RPC 1.16(d).

Wherefore, complainant seeks relief as set forth more fully below.

## CLAIM IV

All prior averments are incorporated herein.

Respondent violated Colo. RPC 3.4(c) and 8.1(b), by failing to respond to the request for investigation in this matter, contrary to the mandates of C.R.C.P. 251.10(a).

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct and that he be appropriately disciplined and assessed the costs of these proceedings.